## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSE ANTHONY TORREZ, : | | |
| Plaintiff, : | No. 3:17-cv-1391 (SRU) | |
| : | | |
| v. : | | |
| : | | |
| MARK A. FRAYNE, et al., : | | |
| Defendants. : | | |

## INITIAL REVIEW ORDER

Jose Anthony Torrez ("Torrez"), currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 asserting violation of his Eighth and Fourteenth Amendment rights. Specifically, he asserts claims for failure to protect him from harm, use of excessive force, unconstitutional conditions of confinement, failure to supervise, deliberate indifference, false reporting of incidents/defamation, denial of adequate medical care, and denial of equal protection of the laws. The named defendants are Dr. Mark A. Frayne ("Frayne"), Dr. Gerald G. Gagne ("Gagne"), Warden William Faneuff, Captain Gregario Robles, Lieutenant Papo Melendez ("Melendez") and Nurse Barbara Savoie ("Savoie"). Torrez' complaint was received on August 16, 2017, and his motion to proceed *in forma pauperis* was granted on August 24, 2017.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not

required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I. <u>Allegations</u>

Torrez has been diagnosed with anxiety, depression, bipolar disorder, attention deficit disorder, attention deficit hyperactivity disorder and post-traumatic stress disorder. He also was sexually abused as a child. Torrez receives medication for those disorders.

Torrez alleges the following. On June 28, 2017, Torrez became distressed because a close relative was experiencing a life-threatening condition. He wrote a goodbye letter to his family, tied a bed sheet around his neck, tied the other end to the top bunk and attempted to hang himself. Torrez lost consciousness. When he revived, he was dizzy, disoriented and on the floor. The blanket that had been tied around his neck had been untied. Torrez' cellmate was standing over him, asking if he was alright. Frayne was standing at the cell window laughing.

Torrez was upset that he had not been successful and embarrassed that he was being laughed at. He got up, grabbed another blanket, and tied it around his neck and the top bunk.

2

Torrez' cellmate began to yell for help and pressed the emergency call button. Frayne remained at the window and continued laughing. He did not call a code or alert custodial staff that Torrez was attempting suicide. Other inmates also began calling for help and pressing the emergency call buttons in their cells. Over Torrez' resistance, the cellmate removed the noose from Torrez' neck.

Sometime later, Melendez arrived at the cell with other correctional officers and sprayed Torrez with a chemical agent. They did not follow the prescribed suicide protocol. Torrez suffers from thyroid gland complications that cause breathing problems. The chemical agent further restricted Torrez' airway making it harder for him to breathe.

Melendez restrained Torrez' hands and feet before any medical services were provided. They took him to 1 West cell 101, rather than to a cell with 24-hour suicide watch. The effects of the chemical agent worsened. Torrez requested, but was not provided, decontamination. He remained in a safety gown suffering the effects of the chemical agent for over 48 hours. At no time did Savoie, Frayne or Melendez direct that he be decontaminated.

Prior to June 28, 2017, Torrez had contacted Frayne, Gagne and Robles seeking mental health assistance regarding the issues that resulted in the suicide attempt. No assistance was provided. Frayne and Savoie, both aware of Torrez' mental health conditions, failed to comply with established procedures.

II.  Analysis

Torrez includes seven counts in his complaint: (1) Frayne failed to protect Torrez from harm when he stood by and did not prevent the suicide attempt or immediately summon assistance; (2) Melendez used excessive force against Torrez when he disregarded Torrez'

medical condition and ordered deployment of the chemical agent; (3) Melendez, Savoie, and Frayne subjected Torrez to unconstitutional conditions of confinement by failing to ensure that Torrez was decontaminated; (4) Faneuff, Frayne, Melendez, and Robles failed to properly supervise subordinates regarding suicide prevention policies and use of chemical agents on inmates with acute medical issues; (5) Frayne, Gagne, Robles, and Savoie were deliberately indifferent to Torrez' mental health needs by failing to provide mental health treatment prior to the incident; (6) Frayne delayed and falsely reported the incident as "manufactured," thereby defaming Torrez and preventing him from obtaining proper medical and mental health assistance; and (7) Frayne, Savoie, and Melendez denied him proper medical care by not permitting proper decontamination and not providing mental health treatment that may have prevented the suicide attempt. Although he referenced the Equal Protection Clause in his introductory statement, Torrez does not include an equal protection claim.

A.  Count One: Failure to Protect/Deliberate Indifference to Safety

Prison officials have a duty to make reasonable efforts to ensure inmate safety. To establish a constitutional violation, an inmate must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists where prison officials know of and disregard an excessive risk to inmate safety. *See id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

Torrez alleges that Frayne stood outside his cell and watched him attempt to commit

4

suicide. He did not intercede or summon assistance. Those allegations are sufficient to state a plausible claim for deliberate indifference to safety/failure to protect.

B. Count Two: Excessive Force

Torrez alleges that Melendez used excessive force when he sprayed Torrez with a chemical agent despite Torrez' medical condition. The use of excessive force against a prisoner can constitute cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 4 (1992); *accord Wilkins v. Gaddy*, 559 U.S. 34, 34, 36 (2010) (per curiam). The "core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (internal quotation marks omitted).

Torrez alleges that Melendez used the chemical agent despite his medical condition. Torrez does not indicate whether Melendez was aware of this condition. However, construing the complaint in Torrez' favor, I consider the allegations sufficient to state a plausible excessive force claim.

C. Count Three: Unconstitutional Conditions of Confinement

Torrez argues that requiring him to remain in a cell for over 48 hours without being decontaminated violates the Eighth Amendment prohibition against unconstitutional conditions of confinement. To state a claim, Torrez must allege facts showing that the defendants failed to provide for his "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). He must show both that the defendants' transgression was sufficiently serious and that they acted with

5

deliberate indifference to his health or safety. *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2001). A condition is considered sufficiently serious if it "pose[s] an unreasonable risk of serious damage to [a prisoner's] future health." *Id.* (internal quotation marks omitted).

I have determined above that the failure to decontaminate Torrez can be a serious medical need. The seriousness of that need also supports Torrez' conditions of confinement claim at this stage of litigation.

    D.    <u>Count Four: Supervisory Liability</u>

Torrez asserts a claim for supervisory liability against Faneuff, Frayne, Melendez, and Robles for failing to supervise and train subordinates regarding use of chemical agents on inmates with medical conditions.

To state a claim for supervisory liability, Torrez must demonstrate one or more of the following criteria: (1) the defendants actually and directly participated in the alleged action, (2) the defendants failed to remedy a wrong after being informed of the wrong though a report or appeal, (3) the defendants created or approved a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation or permitted such a policy or custom to continue, (4) the defendants were grossly negligent in their supervision of the officers who committed the constitutional violation, or (5) the defendants were deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Torrez also must demonstrate a causal link between the actions of the supervisory official and his injuries. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Torrez' claim would fall within the fourth example. To state a failure to train claim,

6

Torrez must show that the defendant "knew or should have known that there was a high degree of risk that [his subordinates] would behave inappropriately … but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to [Torrez]." *Id.*, at 142.

Torrez merely alleges that Faneuff, Frayne, Melendez and Robles failed to supervise and train staff regarding use of a chemical agent. He alleges no facts that would support an inference that the deployment of a chemical agent against him was the result of lack of training. Torrez' conclusory statement is insufficient to state a plausible claim. The claim for failure to train and supervise is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

> E. Counts Five and Seven: Deliberate Indifference to Medical and Mental Health Needs and Denial of Adequate Medical and Mental Health Care

To state a claim for deliberate indifference to a serious mental health need, Torrez must show both that his need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The subjective component requires that the defendants be actually aware of a substantial risk that the inmate would suffer serious harm

7

as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 262, 279-80 (2d Cir. 2006).

Torrez contends that Frayne, Savoie, and Melendez were deliberately indifferent to his medical needs when they failed to ensure that he was decontaminated after being exposed to the chemical agent. This court has held that failure to decontaminate an inmate after exposure to a chemical agent states an Eighth Amendment claim for deliberate indifference to serous medical needs. *See Al-Bukhari v. Semple*, 2017 WL 2125746, at *4 (D. Conn. May 16, 2017).

Torrez also alleges that he repeatedly requested mental health assistance to deal with the family issue that resulted in his suicide attempt but that Frayne, Gagne, Robles, and Savoie ignored his requests and did not provide any mental health treatment prior to the suicide attempt. Those allegations are sufficient, at this stage of litigation, to state a plausible claim for deliberate indifference to mental health needs.

F.  Count Six: Delaying/Falsely Reporting an Incident

Torrez alleges that Frayne defamed him by reporting the incident as "manufactured." To state a claim for defamation under Connecticut law, Torrez must allege that a defendant "published unprivileged false statements that harmed the plaintiff." *Cweklinsky v. Mobil Chem. Co.,* 297 F.3d 154, 159 (2d Cir. 2002) (citing *Torosyan v. Boehringer Ingelheim Pharms.*, 234 Conn. 1, 27 (1995)). A defamatory statement is one that "harm[s] the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 356 (2001). To be actionable, an allegedly defamatory statement "must convey an objective fact" – "a defendant cannot be held liable for expressing a mere opinion." *Daley v. Aetna Life & Cas. Co.*, 249 Conn.

766, 795 (1999). Torrez contends that Frayne falsely reported this incident as being "manufactured" by Torrez which prevented Torrez from obtaining necessary medical and mental health assistance and access. Construing the complaint in Torrez' favor, I consider the allegation sufficient to state a plausible defamation claim.

      G.      <u>Equal Protection</u>

As noted above, Torrez has not included allegations to support an equal protection claim. Even if he had, the claim would be dismissed. The Equal Protection Clause protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather it requires that similarly situated persons be treated the same. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state an equal protection claim, Torrez must allege facts showing that he was treated differently from similarly situated individuals and that the reason for the different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). Torrez does not identify any similarly situated inmates who were treated differently.

Torrez also could assert an equal protection claim based on a "class of one" theory. To state a valid claim, Torrez must allege first that he was intentionally treated differently from others who are similarly situated. Second, he must allege facts showing that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). He must allege an "extremely high" level of similarity with the person to whom he is comparing himself; their circumstances must be "prima facie identical." *Neilson v. D'Angelis*, 409 F 2d 100

(2d Cir. 2005), *overruled in part on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008). Again, Torrez has not identified any similarly situated person who was treated differently. Thus he fails to allege facts to support an equal protection claim.

## Conclusion

The supervisory liability claim is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on remaining federal claims identified above against Frayne, Melendez, Gagne, Robles, and Savoie as well as the defamation claim against Frayne. As the claim against him has been dismissed, the Clerk is directed to terminate Warden Faneuff as a defendant.

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     **The Clerk shall** verify the current work address for each defendant, Frayne, Melendez, Gagne, Robles, and Savoie, with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packets containing the Complaint to the defendants within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendants Frayne, Melendez, Gagne, Robles, and Savoie, in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within

10

**twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) **The Clerk shall** send plaintiff a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to

just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of February 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge